UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

GARY JONES-BEY                                                        PLAINTIFF

v.                                           CIVIL ACTION NO. 3:16-CV-657-TBR

JEFFERSON COUNTY GOVERNMENT *et al*.                                 DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Gary Jones-Bey, a recently-released prisoner, filed this *pro se* complaint under

42 U.S.C. § 1983 when he was incarcerated at the Louisville Metro Department of Corrections

(LMDC).  This matter is before the Court for initial review of the complaint pursuant to

28 U.S.C. § 1915(e)(2) and *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997),

*overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  For the reasons that follow,

the Court will dismiss some claims, allow some claims to proceed, and allow Plaintiff to amend

as to some claims.

## I. <u>SUMMARY OF CLAIMS</u>

Plaintiff identifies nine Defendants in this action:  (1) Jefferson County Government

(JCG); (2) Mark E. Bolton, Director of the LMDC; (3) Stephen P. Durham, Assistant Director of

LMDC; (4) Dwayne Clark, Chief of Staff at LMDC; (5) Martin Baker, the Head of Classification

at LMDC; (6) Walker, Classification Supervisor at LMDC; (7) Taylor, the Grievance

Coordinator at LMDC; (8) Eric Troutman, Senior Operator of Inmate Records; and

(9) Correctional Care Solutions (CCS), the provider of medical services to inmates at LMDC.

All of the persons named as Defendants are being sued in their individual and official capacities.

Plaintiff seeks two forms of injunctive relief.  First, he requests the Court to "[i]ssue an

injunction ordering the Defendant [CCS] to immediately care and treat Plaintiff's broken and

infected tooth." Second, he requests the Court to "[i]ssue an injunction ordering Defendants JCG and Bolton [to] reduce the number of convicted felons confined in the Jefferson County Jail, and to transfer each convicted felon confined herein to a state penal facility . . . ." Plaintiff also requests compensatory damages against JCG and CCS for their "deliberate failure to provide Dental care to Plaintiff." Finally, he requests punitive damages against all Defendants.

Plaintiff includes a section in his complaint regarding "Exhaustion Of All Available Remedies." Therein, Plaintiff complains that no one ever responded to the grievance that he filed regarding the issues he raises in this complaint. Thus, Plaintiff states, after the required wait, he filed an "Action Request" requesting a hearing on the grievance which "served as an Appeal to Plaintiff's original Grievance." Plaintiff states that he received no response to this request. Plaintiff states that he "considers this action also a challenge to the Grievance Mechanism instituted as is at LMDC itself." The Court construes this first claim to be a challenge to the alleged failure to respond to Plaintiff's grievance.

Plaintiff's second claim involves alleged overcrowding at the LMDC where he was incarcerated at the time the complaint was filed. Plaintiff states that the LMDC is designed to hold a maximum of approximately 1,793 inmates, but "count regularly clears . . . as high as 2,338." Plaintiff sets forth a "list of ursurpations and long term violations [which] give rise to a Constitutional magnitude." According to Plaintiff, the overcrowding "has directly caused breakdowns in classification," and "[a]vailable space (not necessarily bed space) takes precedence over inmates classified as members of a Security Risk Group Threat . . . ." Plaintiff states that the overcrowding causes "excessive noise infringing upon sleeping or resting inmates as noise levels often exceed 90 decibels." Plaintiff complains that when the "dormitory populations exceed limitations, 'out of cell' time for activities (gym call) is not increased."

2

Further, Plaintiff states that "inmates sleeping on/in boats are doing so in common areas . . . where inmates eat, use the telephone, play cards . . . ." Plaintiff states that "unsanitary conditions are exaggerated simply due to overpopulation." Some of the unsanitary conditions alleged by Plaintiff are that on some days inmates are not given a mop or broom. Sometimes inmates clean the toilet with a mop because there are no toilet brushes, and "limited use of cleaning fluids provided." Even though there are additional inmates at LMDC, Plaintiff complains that there is not an increase in the number of toilets, sinks, and showers to account for the additional number of inmates. Plaintiff states that some of the sinks and showers are "often clogged for extended periods of time before [being] fixed, if repaired." Plaintiff states that this contributes to unsanitary conditions including "Black Mold in and around ventilation and air ducts." Finally, Plaintiff alleges that Defendant Bolton "opened a condemned, jail located over the Louisville Police Department's Headquarters while simultaneously having open bed space at the main jail." Plaintiff states this was a "purely economical move."

Plaintiff's third claim involves "Underpaid, Understaffed, Overworked" LMDC staff. According to Plaintiff, there are many vacancies in the LMDC leading to staff working "mandatory overtime hours," staff "quitting, resigning or accepting the punishment for refusing forced overtime." Plaintiff states that "[o]vercrowded and understaffed equals unsafe conditions." Plaintiff states that the overcrowding may be a fire hazard. He contends that the "occupancy violations coupled by dormitories devoid of any sprinkler system are illegal, unconstitutional and deliberately indifferent." Plaintiff asserts that the fire safety equipment is not properly maintained and repaired, and there is a lack of sufficient staff in the event an evacuation is necessary. He further states that correctional officers and administrative staff are "all underpaid." Plaintiff asserts that "[a] new contract is needed immediately" that should

include a "substantial pay raise" and "cost of living increases."  Likewise, Plaintiff asserts, that "inmate jobs deserve additional pay raises."  Plaintiff states that "work credits and higher pay are inherently necessary for reward, motivation, self sufficiency and habilitation."  Finally, Plaintiff states that "[u]nderpayed, understaffed, overworked staff all contribute directly and indirectly to conditions and an environment that is conducive to constitutional infringements safety and security are part of a [Correctional Officer's] duties and responsibilities."  As to this claim, Plaintiff asserts Eighth and Fourteenth Amendment violations.

Plaintiff's fourth claim involves "[f]ood and personal hygiene."  Plaintiff asserts that the two-week wait period for indigent inmates to receive "an initial package" is "to[o] long."  He states that the travel size toothpaste provided is not enough to stretch for two weeks.  Plaintiff complains that female inmates are not provided sanitary napkins for three to five days, and that this is "repugnant," "immoral," and "certainly unconstitutional."  Further, Plaintiff complains that the food is not nutritional, and that the "caloric intake is below the nationally attributed/required standards."  Plaintiff states that the portions are "undersized" and served cold. He states that "failure to maintain food at the proper temperature constitutes a serious health hazard by fostering the growth of bacteria."  Plaintiff asserts that the practice of "giving inmates late night sandwiches while following up with a noon brunch is hilarious," and that this custom is "refered to by prisoners as 'Starvation Sunday.'"  Plaintiff states that the vegetables are raw or undercooked "rendering them inedible."  He states that LMDC serves food that is below budget and that is "tatamount to below standards."  He contends the food provided is "cruel and unusual," and that it is an Eighth Amendment violation.

Plaintiff's fifth claim involves "[r]eligion."  He states that the "policy, practice or custom that inmates whom attend basic Islamic Service(s) be on an approved list" violates the First

Amendment.  He states that Catholic and Christian services "do not require adherents to be on an approved list."  Plaintiff asserts this is an equal protection violation.  Plaintiff states that he has been denied "Islamic Service" for five consecutive weeks.  Further, he states that "Islamic believers that request Halal Meals similar to the Kosher diet allowed Jewish inmates are simply denied."  Plaintiff further states that "[e]xcluding disciplinary and administrative segregated prisoners from attending Jumu'ah services may be compelling but denial to attend Jumu'ah over a protracted period for non-security reasons or whim is a denial of the First Amendments Free Exercise of Religion."

Plaintiff's sixth claim involves the alleged denial of medical treatment.  Plaintiff states that he requested doctors' appointments for various reasons, including treatment for "severly burned skin conditions," and that "[a] 30 (thirty) day hiatus and longer is equal to a denial where Plaintiff experiences severe pain and discomfort."  Plaintiff states that due to the delay in treatment, he "has opted to endure the pain and discomfort until transferred to a Kentucky Department of Corrections . . . facility or released."  Plaintiff states that on or about September 15, 2016, he requested an emergency dental appointment because he had swelling in his mouth, bleeding, and pain.  He states that his "tooth [had] broken off when brushing."  Plaintiff states that on October 2, 2016, he "voiced his dental concerns to a [CCS] nurse."  According to Plaintiff, the nurse told him to "wait a couple of more weeks and if he hasn't seen anybody fill out another" request for an appointment.  Plaintiff states that delaying treatment is a violation of the Fifth, Eighth, and Fourteenth Amendments.

Plaintiff's seventh and final claim is against Defendant Troutman.  As to this claim, Plaintiff states as follows:

Defendant Troutman is misappropriating inmate funds, claiming monies from interest bearing accounts, failure to timely release court ordered inmates, failure to properly administer commissary profits and diverting those profits for purposes other than those intended, overcharging inmates for restitution of lost of damaged County Jail property and failure to deduct the $35 booking fee from the $100 per day allotment all violation of Due Process and Equal Protection clauses of the Fifth and Fourteenth Amendments to the Constitution.

## II. STANDARD OF REVIEW

Upon review under 28 U.S.C. § 1915(e), a district court must dismiss a case at any time if it determines that the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327. In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). The court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169

6

(6th Cir. 1975).  To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.  ANALYSIS

### A.  *Grievance Claim*

In the instant case, Plaintiff claims that he filed a grievance regarding the alleged overcrowding at LMDC and the alleged unconstitutional violations arising as a result of this overcrowding.  Plaintiff states that he waited the requisite time, but he received no response to his grievance.  Thereafter, according to Plaintiff, he filed an "Action Request" that "served as an Appeal to Plaintiff's original Grievance."  As of the filing of this complaint, states Plaintiff, he has not received any response to this appeal.

Prisoners do not possess a constitutional right to a prison grievance procedure. *See Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002) ("A grievance appeal does not implicate the First Amendment right of access to the courts because there is no inherent constitutional right to an effective prison grievance procedure."); *LaFlame v. Montgomery Cty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996) (finding that plaintiff's allegation that the institution's grievance procedures were inadequate to redress his grievances did not violate the Due Process Clause and did not "give rise to a liberty interest protected by the Due Process Clause"); *Buckley v. Barlow*,

997 F.2d 494, 495 (8th Cir. 1993) (holding that "no constitutional right was violated by the defendants' failure, if any, to process all of the grievances [plaintiff] submitted for consideration").  Nor does state law create a liberty interest in the grievance procedures.  *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983).  Further, if the prison provides a grievance process, violations of its procedures or its ineffectiveness do not rise to the level of a federal constitutional right.  *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) ("All circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures."); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (stating that "there is no inherent constitutional right to an effective prison grievance procedure") (citing cases).

Accordingly, Plaintiff's claim regarding his unanswered grievances will be dismissed.  Further, it appearing that this is the only claim Plaintiff brings against Defendant Taylor, she will be dismissed from this action.

### B.  Overcrowding Claim

Plaintiff alleges that LMDC is regularly overcrowded, and that this overcrowding causes "breakdowns in classification," and "[a]vailable space (not necessarily bed space) takes precedence over inmates classified as members of a Security Risk Group Threat . . . ."  Plaintiff states that the overcrowding causes "excessive noise" which interrupts sleeping or resting.  He states that inmates have to sleep in common areas interfering with the activities that go on there and causing unsanitary conditions.  Plaintiff states that the overcrowding causes unsanitary conditions.  Some of the unsanitary conditions alleged by Plaintiff are that on some days inmates are not given a mop or broom, that the lack of toilet brushes has led inmates to clean the toilet with a mop, and that "limited use of cleaning fluids [is] provided."  Even though there are

additional inmates at LMDC, Plaintiff complains that there is not an increase in the number of toilets, sinks, and showers to account for the additional number of inmates. Plaintiff states that some of the sinks and showers are "often clogged for extended periods of time before [being] fixed, if repaired." Plaintiff states that this contributes to unsanitary conditions including "Black Mold in and around ventilation and air ducts." Additionally, Plaintiff alleges that this overcrowding is a safety risk to inmates in the event an evacuation might be necessary.

"[O]vercrowding is not, in itself, a constitutional violation." *Agramonte v. Shartle*, 491 F. App'x 557, 560 (6th Cir. 2012). "'[E]xtreme deprivations' must be alleged in order to support a prison-overcrowding claim." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). If the overcrowding results in "deprivations denying 'the minimal civilized measure of life's necessities,'" that would be a constitutional wrong. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Plaintiff has failed to allege conditions rising to the level of an Eighth Amendment violation. *See Agramonte v. Shartle*, 491 F. App'x at 559-60 (finding that plaintiffs allegations that the number of toilets, showers, wash basis, and showers had not increased with the increased population, that there were lines to use the bathrooms and showers, that there were no comfortable places to sit to watch television of write letters, and that there would be difficulty evacuating the building in the event of a fire, failed to state an overcrowding claim because plaintiffs failed to allege an unconstitutional denial of basic needs); *Keeling v. Louisville Metro Corr. Dep't*, No. 314-CV-P697-DJH, 2015 WL 3457847, at *3 (W.D. Ky. May 29, 2015), *appeal dismissed* (Nov. 19, 2015) (finding that plaintiff's allegations that the cell pods are crowded and that there was fighting over toiletries, soap, seating, and beds are not deprivations of the minimal civilized measure of life's necessities; thus, plaintiff failed to state a claim upon which relief may be granted); *Lyons v. Wickersham*, No. 2:12-CV-14353, 2012 WL 6591581, at

9

*4 (E.D. Mich. Dec. 18, 2012) ("The mere allegation of the presence of some mold does not create a condition 'intolerable for prison confinement.'") (quoting *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)).

Moreover, Plaintiff does not state that he suffered any harm as a result of the alleged overcrowding. "A speculative injury does not vest a plaintiff with standing . . . ." *King v. Deskins*, No. 99-6381, 2000 WL 1140760, at *2 (6th Cir. Aug. 8, 2000). Further, Plaintiff may not recover damages for mental or emotional injury without a showing of physical injury. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . .)." The Sixth Circuit has repeatedly found Eighth Amendment claims for monetary relief precluded by 42 U.S.C. § 1997e(e) absent a showing of physical injury. *See Jennings v. Weberg*, No. 2:06-CV-235, 2007 WL 80875, at *3 (W.D. Mich. Jan. 8, 2007) (collecting cases).

For these reasons, the overcrowding claim will be dismissed.

### C. "Underpaid/Understaffed/Overworked" Claim

Plaintiff asserts that there are many vacancies in the LMDC leading to staff working "mandatory overtime hours," and to staff "quitting, resigning or accepting the punishment for refusing forced overtime." Plaintiff states that "[o]vercrowded and understaffed equals unsafe conditions." He further states that correctional officers and administrative staff are "all underpaid." Plaintiff asserts that "[a] new contract is needed immediately" that should include a "substantial pay raise" and cost of living increases. Likewise, Plaintiff asserts, that "inmate jobs deserve additional pay raises." Plaintiff states that "work credits and higher pay are inherently necessary for reward, motivation, self sufficiency and habilitation."

Plaintiff does not state that he had a prison job.  Thus, it appears that he is attempting to bring this claim on behalf of other LMDC staff and inmates.  "[A]lthough 28 U.S.C. § 1654 provides that '[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel,' that statute does not permit plaintiffs to appear *pro se* where interests other than their own are at stake."  *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002); *see also Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998) ("[I]n federal court a party can represent himself or be represented by an attorney, but cannot be represented by a nonlawyer.").  Consequently, Plaintiff cannot litigate the interests of others in this civil rights action.

Accordingly, Plaintiff's claim regarding "Underpaid/Understaffed/Overworked" LMDC staff and inmates will be dismissed.

### D.  Claims Involving Food and Hygiene Products

Plaintiff complains that the food is not nutritional; and that the "caloric intake is below the nationally attributed/required standards."  Plaintiff states that the portions are "undersized" and served cold.  He states that "failure to maintain food at the proper temperature constitutes a serious health hazard by fostering the growth of bacteria."  He states that the practice of "giving inmates late night sandwiches while following up with a noon brunch is hilarious."  Plaintiff states that the vegetables are raw or undercooked "rendering them inedible."  He states that LMDC serves food that is below budget and that is "tatamount to below standards."  He contends the food provided is an Eighth Amendment violation.

As to his hygiene complaints, Plaintiff asserts that the two-week wait period for indigent inmates to receive "an initial package" is "to[o] long."  He states that the travel size toothpaste provided is not enough to stretch for two weeks.  Plaintiff complains that female inmates are not

provided sanitary napkins for three to five days, and that this is "repugnant," "immoral," and "unconstitutional."

The Eighth Amendment requires prison officials to provide inmates with a diet that is nutritionally adequate for the maintenance of normal health. *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010); *Cunningham v. Jones*, 567 F.2d 653, 656 (6th Cir. 1977). "If the prisoner's diet . . . is sufficient to sustain the prisoner in good health, no constitutional right has been violated." *Alexander v. Carrick*, 31 F. App'x 176, 179 (6th Cir. 2002). Complaints about the preparation and quality of prison food are "generally far removed from Eighth Amendment concerns." *Cunningham v. Jones*, 567 F.2d at 659-60. Further, generally complaints regarding "one meal a day" do not state an Eighth Amendment violation. *Id.* at 660.

Although Plaintiff complains about the food and hygiene products, he has not alleged any harm resulting from the alleged nutritionally deficient meals or the lack of hygiene products provided at LMDC. As previously stated, "[a] speculative injury does not vest a plaintiff with standing . . . ." *King v. Deskins*, 2000 WL 1140760, at *2. Further, Plaintiff may not recover damages for mental or emotional injury without a showing of physical injury. *See* 42 U.S.C. § 1997e(e).

For these reasons, Plaintiff's claims involving food and hygiene products will be dismissed.

### E.  Claims Against Defendant Troutman

As to Defendant Troutman, Plaintiff states as follows:

Defendant Troutman is misappropriating inmate funds, claiming monies from interest bearing accounts, failure to timely release court ordered inmates, failure to properly administer commissary profits and diverting those profits for purposes other than  was intended, overcharging inmates for restitution of lost of damaged County Jail property and failure to deduct the $35 booking fee from the $100 per

12

day allotment all violation of Due Process and Equal Protection clauses of the Fifth and Fourteenth Amendments to the Constitution.

### 1. *Equal Protection Claim*

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To prove a violation of the Equal Protection Clause, a plaintiff must allege an invidious discriminatory purpose or intent. *Washington v. Davis*, 426 U.S. 229, 239-45 (1976); *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 271-74 (1979). "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass.*, 442 U.S. at 279.

Plaintiff does not claim that he was treated differently than other inmates. In fact, he does not even indicate that Defendant Troutman took any action against him or that he was in any way affected by the alleged wrongdoing of Defendant Troutman. Plaintiff also fails to allege any discriminatory purpose or intent on the part of Defendant Troutman. For these reasons, Plaintiff's equal protection claim will be dismissed.

### 2. *Due Process Claim*

The Fifth Amendment Due Process Clause provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const., amend. V. Plaintiff does not indicate that he was deprived of anything. He makes general and broad allegations, but does not in any way connect the alleged wrongdoing to him. For this reason, Plaintiff's due process claim will be dismissed.

13

### F.  Injunctive Relief Claims

Plaintiff seeks injunctive relief in this case.  He asks the Court to do the following:

(1) order Defendant CCS to immediately treat his broken and infected tooth; (2) order

Defendants JCG and Bolton to reduce the number of convicted felons in the Jefferson County

Jail and to transfer convicted felons; (3) appoint a special master to oversee and monitor past

injunctions issued by the Court; and (4) appoint an arbitrator to intervene, study and make

recommendations regarding LMDC.

Since Plaintiff is no longer incarcerated in the LMDC, his requests for injunctive relief

are moot.  *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 510 n.1 (6th Cir. 2001); *Wilson v. Yaklich*,

148 F.3d 596, 601 (6th Cir. 1998); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Higgason

v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996).

Therefore, the claims for injunctive relief will be dismissed as being moot.

### G.  Religion Claims

#### 1.  Official-Capacity Claims

As to his First Amendment claim regarding free exercise of religion, Plaintiff states that

the "policy, practice or custom that inmates whom attend basic Islamic Service(s) be on an

approved list" violates the First Amendment.  He states that Catholic and Christian services "do

not require adherents to be on an approved list."  Plaintiff asserts this is an equal protection

violation.  Plaintiff states that he has been denied "Islamic Service" for five consecutive weeks.

Further, he states that "Islamic believers that request Halal Meals similar to the Kosher diet

allowed Jewish inmates are simply denied."  Plaintiff further states that "[e]xcluding disciplinary

and administrative segregated prisoners from attending Jumu'ah services may be compelling but

denial to attend Jumu'ah over a protracted period for non-security reasons or whim is a denial of

the First Amendments Free Exercise of Religion."  It appears that Plaintiff brings his First

Amendment claim against Defendants JCG, Bolton, Durham, Clark, Baker, and Walker.

"Official-capacity suits . . . 'generally represent [] another way of pleading an action

against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165

(1985) (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978)).

Plaintiff's official-capacity claims against Defendants Bolton, Durham, Clark, Baker, and

Walker are actually against their employer, Jefferson County.  *Id.* at 166; *see also Lambert v.

Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008) (stating that civil rights suit against county clerk

of courts in his official capacity was equivalent of suing clerk's employer, the county).

Moreover, JCG is not a "person" subject to suit under § 1983; in this situation, it is Jefferson

County that is the proper defendant.  *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)

(advising that since the county police department is not an entity which may be sued, the county

is the proper party); *Smallwood v. Jefferson Cty. Gov't*, 743 F. Supp. 502, 503 (W.D. Ky. 1990)

(construing claims brought against the Jefferson County Government, the Jefferson County

Fiscal Court, and the Jefferson County Judge Executive as claims against Jefferson County

itself).  The Court will therefore construe the official-capacity claims as claims brought against

Jefferson County.

When a § 1983 claim is made against a municipality, this Court must analyze two distinct

issues:  (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so,

whether the municipality is responsible for that violation.  *Collins v. City of Harker Heights,

Tex.*, 503 U.S. 115, 120 (1992).  Regarding the second issue, a municipality cannot be held

responsible for a constitutional deprivation unless there is a direct causal link between a

municipal policy or custom and the alleged constitutional deprivation.  *Monell v. Dep't of Soc.*

*Servs. of N.Y.*, 436 U.S. at 694; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993).

Upon consideration, the Court will allow the following two First Amendment claims for monetary damages to proceed against Defendants JCG, Bolton, Durham, Clark, Baker, and Walker in their official-capacity:  (1) denying Plaintiff permission to attend "Islamic Service" for five consecutive weeks; and (2) denying Plaintiff Halal meals.

### 2.  *Individual-Capacity Claims*

"It is axiomatic that a complaint under 42 U.S.C. § 1983 must show a causal connection between the named defendants and the alleged constitutional deprivation; the doctrine of *respondeat superior* has no application thereunder."  *Cox v. Barksdale*, No. 86-5553, 1986 WL 18435, at *1 (6th Cir. Nov. 13, 1986) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982).  "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints."  *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *see also LeMasters v. Fabian*, No. 09-702 DSD/AJB, 2009 WL 1405176, at *2 (D. Minn. May 18, 2009) ("To state an actionable civil rights claim against a government official or entity, a complaint must include specific factual allegations showing how that particular party's own *personal* acts or omissions directly caused a violation of the plaintiff's constitutional rights.").

Plaintiff asserts that Defendants Bolton, Durham, Clark, Baker, and Walker "in maintain[ing] continued overcrowded conditions at LMDC over a protracted period have become malicious and sadistic in the areas of . . . religious freedom . . . in violation of Plaintiffs Rights

under the First . . . Amendment[].”  While Plaintiff sues these Defendants in their individual

capacities, he does not state specific allegations against them in the body of his complaint or

state how they were directly involved in the alleged events.  While the Court has a duty to

construe *pro se* complaints liberally, Plaintiff is not absolved of his duty to comply with the

Federal Rules of Civil Procedure by providing Defendants with “fair notice of the basis for [his]

claims.”  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).  Federal Rule of Civil

Procedure 8(a) requires a pleading to contain “a short and plain statement of the claim showing

that the pleader is entitled to relief[.]”  To state a claim for relief, Plaintiff must show how each

Defendant is accountable because the Defendant was personally involved in the acts about which

he complains.  *See Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976).  Plaintiff fails to state in the

complaint the grounds for seeking relief against Defendants Bolton, Durham, Clark, Baker, and

Walker, and the claims against these Defendants in their individual capacity are subject to

dismissal on this basis.

However, “under Rule 15(a) a district court can allow a plaintiff to amend his complaint

even when the complaint is subject to dismissal under the PLRA [Prison Litigation Reform

Act].”  *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013).  The Court will allow Plaintiff

an opportunity to amend his complaint to describe the facts surrounding how these Defendants

allegedly violated his First Amendment rights.

### H.  Medical Treatment Claims Against CCS

#### 1.  Official-Capacity Claims

“The Sixth Circuit has held that the analysis that applies to a § 1983 claim against a

municipality applies to a § 1983 claim against a private corporation.”  *Detwiler v. S. Health

Partners*, No. 3:16-cv-P343-DJH, 2016 WL 4083465, at *2 (W.D. Ky. Aug. 1, 2016) (citing

17

*Monell v. Dep't of Soc. Serv. of N.Y.*, 436 U.S. at 691) ("*Monell* involved a municipal

corporation, but every circuit to consider the issue has extended the holding to  private

corporations as well.")).  CCS cannot be held liable on a respondeat superior basis for the actions

of its employees.  *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001); *Ruley v.

S. Health Partners*, No. 4:10-CV-P34-M, 2011 WL 2214998, at *4 (W.D. Ky. June 6, 2011).  A

private corporation such as CCS is liable under § 1983 only when an official policy or custom of

the corporation causes the alleged deprivation of the constitutional right.  *See Street v. Corr.

Corp. of Am.*, 102 F.3d 810, 817 (6th Cir. 1996).  Simply stated, "a plaintiff must 'identify the

policy, connect the policy to the city itself and show that the particular injury was incurred

because of the execution of that policy.'"  *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364

(6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled

on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)).  The policy or

custom "must be 'the moving force of the constitutional violation' in order to establish the

liability of a government body under § 1983."  *Searcy v. City of Dayton*, 38 F.3d 282, 286

(6th Cir. 1994) (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).  "The

'official policy' requirement was intended to distinguish acts of the *municipality* from acts of

*employees* of the municipality, and thereby make clear that municipal liability is limited to action

for which the municipality is actually responsible."  *Pembaur v. Cincinnati*, 475 U.S. 469, 479

(1986).

Plaintiff alleges that he requested doctors' appointments for various reasons, including

treatment for "severly burned skin conditions," and that "[a] 30 (thirty) day hiatus and longer is

equal to a denial where Plaintiff experiences severe pain and discomfort."  Plaintiff states that

due to the delay in treatment, he "has opted to endure the pain and discomfort until transferred to

a Kentucky Department of Corrections . . . facilty or released."  Plaintiff states that on September 15, 2016, he requested an emergency dental appointment because he had swelling in his mouth, bleeding, and pain.  He states that on or about October 2, 2016, he "voiced his dental concerns to a [CCS] nurse."  According to Plaintiff, she told him to wait a couple of weeks, and if he had not seen anyone to fill in another request for an appointment.

Plaintiff makes no allegation that the delay in treatment of his "severely burned skin conditions" and his problem tooth resulted from a policy or custom of CCS.  There are no allegations connecting the alleged lack of medical and dental care to the execution of a CCS policy.  Consequently, Plaintiff fails to state an Eighth Amendment claim against CCS as to the alleged denial of medical and dental care, and these claims against it will be dismissed.

### 2. *Individual-Capacity Claims*

In the present action, Plaintiff asserts that Defendants Bolton, Durham, Clark, Baker, and Walker "in maintaining continued overcrowded conditions at LMDC over a protracted period have become malicious and sadistic in the areas of . . . dental and medical care . . . and other Related matters all in violation of Plaintiffs Rights . . . ."  Plaintiff sets forth no specific allegations as to how any of these Defendants were involved in the alleged denial of medical and dental care.  In fact, Plaintiff does not identify these Defendants as employees of CCS, who he states provides the medical care at LMDC.

Upon consideration, the Court will allow Plaintiff an opportunity to amend his complaint to name the nurse he alleges denied him medical care and describe the facts, if any, surrounding how the nurse and Defendants Bolton, Durham, Clark, Baker, and Walker allegedly violated his Eighth Amendment right to medical and dental care.

19

## IV. <u>ORDER</u>

For the reasons set forth herein, and the Court being otherwise sufficiently advised,

**IT IS ORDERED as follows:**

(1)  Plaintiff's claim involving failure to respond to his grievance is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted;

(2)  Plaintiff's Eighth Amendment overcrowding claim is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted and to, the extent he seeks monetary relief, for failure to allege any physical injury as required by 42 U.S.C. § 1997e(e);

(3)  Plaintiff's "Underpaid/Understaffed/Overworked" claim is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted since he is precluded from litigating the interests of others;

(4)  Plaintiff's Eighth Amendment claims involving food and hygiene products are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted and to, the extent he seeks monetary relief, for failure to allege any physical injury as required by 42 U.S.C. § 1997e(e);

(5)  Plaintiff's claims against Defendant Troutman are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted.

(6)  Plaintiff's claims for injunctive relief are **DISMISSED** as being moot;

(7)  Plaintiff's Eighth Amendment claims against CCS for failure to treat his medical and dental problems are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted; and

(8)  There being no remaining claims against them, Defendants Taylor, Troutman, and CCS are **DISMISSED** from this action.

The **Clerk of Court** is **DIRECTED** to remove Taylor, Eric Troutman, and Correctional Care Solutions as Defendants from the docket of this action.

**IT IS FURTHER ORDERED** as follows:

(1)  That Plaintiff's First Amendment claims for monetary damages against Defendants JCG, and Bolton, Durham, Clark, Baker, and Walker in their official-capacity for (1) denying Plaintiff permission to attend "Islamic Service" for five consecutive weeks; and (2) denying Plaintiff Halal meals will proceed; and that

(2)  Within **30 days** from the entry date of this Memorandum Opinion and Order, Plaintiff may file an amended complaint.  **Plaintiff shall sue Defendants in their individual capacities and shall describe the specific facts surrounding how each Defendant allegedly violated his First Amendment rights to free exercise of his religion and his Eighth Amendment right to medical and dental care**.

The Clerk of Court is **DIRECTED** to place the instant case number and the word "Amended" on a § 1983 complaint form and send it, along with three summons forms, to Plaintiff for his completion.

**Plaintiff is WARNED that should he fail to file an amended complaint within 30 days, the Court will enter an Order dismissing the claims he fails to amend for the reasons stated herein**.

Date:

cc:     Plaintiff, *pro se*
        Defendants
        Jefferson County Attorney
4413.003

21